UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DETROY LIVINGSTON,

               PLAINTIFF,

v.

JOHN T. BENNIS, in both his official and individual capacity, THOMAS J. PISKOR, in both his official and individual capacity, T. BRECKON, in both his official and individual capacity, DONALD SELSKY, in both his official and individual capacity, and WALTER B. KELLY, in both his official and individual capacity,

               DEFENDANTS.

**SECOND AMENDED COMPLAINT**

**CASE NO. 99-CV-6169L (F)**

**JURY TRIAL DEMANDED**

---

      Plaintiff Detroy Livingston (Plaintiff or Livingston) by his attorneys Harter Secrest & Emery LLP, and for his Second Amended Complaint against defendants John T. Bennis (Bennis), in his official and individual capacity, Thomas J. Piskor (Piskor), in both his official and individual capacity, T. Breckon (Breckon), in both his official and individual capacity, Donald Selsky (Selsky), in both his official and individual capacity, and Walter B. Kelly (Kelly), in both his official and individual capacity (collectively Defendants), hereby alleges as follows:

### PARTIES

1.    Plaintiff Detroy Livingston was in the custody of the New York State Department of Corrections and housed at the Attica Correctional Facility at the time the acts about which he now complains occurred.

2.    Upon information and belief, defendant John T. Bennis was employed by the New York State Department of Corrections as a corrections officer at the Attica Correctional Facility at the time the acts about which Plaintiff now complains occurred.

3. Upon information and belief, defendant Thomas J. Piskor was employed by the New York State Department of Corrections as a corrections officer at the Attica Correctional Facility at the time the acts about which Plaintiff now complains occurred.

4. Upon information and belief, defendant T. Breckon was employed by the New York State Department of Corrections as a hearing officer at the time the acts about which Plaintiff now complains occurred.

5. Upon information and belief, defendant Donald Selsky was employed by the New York State Department of Corrections as Director of Special Housing of the Inmate Disciplinary Program at the time the acts about which Plaintiff now complains occurred.

6. Upon information and belief, defendant Walter B. Kelly was employed by the New York State Department of Corrections as Superintendent of the Attica Correctional Facility at the time the acts about which Plaintiff now complains occurred.

## JURISDICTION

7. Jurisdiction is properly laid in this Court pursuant to 28 U.S.C. § 1343, since this action arises under the provisions of the Fourteenth Amendment to the United States Constitution and under 42 U.S.C. § 1983.

## VENUE

8. Venue is properly placed in the Western District of New York because the acts giving rise to Plaintiff's current claims occurred in the Western District of New York, specifically at the Attica Correctional Facility, in Attica, New York.

## FACTS

### THE JULY 11, 1996 FALSE MISBEHAVIOR REPORT

9. On July 11, 1996, Plaintiff was in the custody of the New York State Department of Corrections and housed at the Attica Correctional Facility.

10. At approximately 6:20 p.m. on July 11, 1996, defendant Bennis and one other corrections officer, Officer Justinger (who is not named as a party in this Second Amended Complaint), removed Plaintiff from his cell to transport him to the shower area, so that he could shower.

11. While escorting Plaintiff to the shower area, defendant Bennis assaulted Plaintiff.

12. Plaintiff did nothing to provoke this assault by defendant Bennis.

13. A third corrections officer, upon hearing the disturbance created by defendant Bennis' assault on Plaintiff, alerted several other corrections officers who were near the site of the disturbance.

14. These other corrections officers rushed to the site of the disturbance, whereupon they helped defendant Bennis apply mechanical restraints to Plaintiff.

15. The disturbance was captured and recorded by a videotape recorder that was operated and maintained by the New York State Department of Corrections (DOCS).

16. Afterward, defendant Bennis submitted an "Inmate Misbehavior Report," in which he reported that Plaintiff instigated the July 11, 1996 disturbance when he allegedly elbowed defendant Bennis in the face.

17. Defendant Bennis did not include in the Inmate Misbehavior Report that he assaulted Plaintiff.

18. Defendant Bennis knew that the information contained in the July 11, 1996 Inmate Misbehavior Report was false.

19. The July 11, 1996 Inmate Misbehavior Report charges Plaintiff with violations of Charge Number 104.11 (Violent Conduct) and Charge Number 100.11 (Assault on Staff).

20. Plaintiff was afforded a hearing on the charges in the July 11, 1996 Inmate Misbehavior Report, which was conducted by defendant Breckon.

21. On July 29, 1996, defendant Breckon found Plaintiff guilty of violations of Charge Number 104.11 (Violent Conduct) and Charge Number 100.11 (Assault on Staff).

22. Based on this guilty determination, defendant Breckon sentenced Plaintiff to: confinement in the Special Housing Unit (SHU) for 12 months; revocation of the privilege to receive packages for 12 months; revocation of the privilege to use the commissary for 12 months; revocation of the privilege to use the telephone for 12 months; and a reduction in the amount of Plaintiff's accumulated time off for good behavior by 6 months.

23. Plaintiff appealed defendant Breckon's decision, and defendant Breckon's July 29, 1996 decision was overturned on administrative appeal.

24. As a result, Plaintiff was afforded a new hearing on the charges contained in the July 11, 1996 Inmate Misbehavior Report.

25. On November 6, 1996, after the second hearing on the charges contained in the July 11, 1996 Inmate Misbehavior Report, Plaintiff was found guilty and sentenced to: confinement in the Special Housing Unit (SHU) for 12 months; revocation of the privilege to receive packages for 12 months; revocation of the privilege to use the commissary for 12 months; revocation of the privilege to use the telephone for 12 months; and a reduction in the amount of Plaintiff's accumulated time off for good behavior by 6 months.

26. Thereafter, Plaintiff initiated an Article 78 Proceeding challenging the findings of the second hearing.

27. On November 3, 1997, Judge Dadd of the Supreme Court of New York, Wyoming County, ruled on Plaintiff's Article 78 petition and reversed the determinations made in the second hearing on the charges contained in the July 11, 1996 Inmate Misbehavior Report, and granted Plaintiff a new hearing on those charges.

28. On December 16, 1997, the third hearing concerning the charges contained in the July 11, 1996 Inmate Misbehavior Report was commenced.

29. At that hearing, Plaintiff was unable to present evidence in the form of the videotape of the incident since defendant Kelly allowed the tape to be destroyed.

30. Also at that hearing, Plaintiff was unable to present the live testimony of one witness, Inmate Washington, because he claimed that since so much time had passed, he was unable to recall the events in question.

31. Plaintiff was also unable to present the live testimony of one witness, Inmate Barnes, because he had been paroled since the second hearing, and was unavailable to testify at the third hearing.

32. The third hearing officer read the statements given by Inmate Barnes into the record, since he could not appear in person to testify.

33. However, Plaintiff was provided no opportunity to ask Inmate Barnes questions, or to have him expand on his previous statements.

34. The third hearing officer decided not to consider Inmate Barnes' statements because he deemed them to be redundant of earlier testimony given by other witnesses.

35. Officer Justinger, who helped defendant Bennis escort Plaintiff to the shower area on July 11, 1996, testified at the third hearing, but had no independent recollection of the incident, so he was allowed to read the falsified Inmate Misbehavior Report into the record.

36. On December 22, 1997 the third hearing was completed and the hearing officer found Plaintiff guilty of violations of Charge Number 104.11 (Violent Conduct) and Charge Number 100.11 (Assault on Staff).

37. As a result, the hearing officer sentenced Plaintiff to 12 months confinement in the Special Housing Unit (SHU), loss of the privilege to receive packages for 12 months, loss of the privilege to use the commissary for12 months, loss of the privilege to use the telephone for 12 months, and 6 months of lost good time.

38. This decision was upheld on administrative appeal.

39. Plaintiff served this sentence.

40. Plaintiff exhausted all the available administrative remedies with regard to the July 11, 1996 false Inmate Misbehavior Report.

### THE FEBRUARY 25, 1997 FALSE MISBEHAVIOR REPORT

41. On July February 25, 1997, Plaintiff was in the custody of the New York State Department of Corrections and housed at the Attica Correctional Facility.

42. At approximately 11:00 a.m. on February 27, 1997, Corrections Officers Sette and Mackiewicz (who are not named as defendants in this Second Amended Complaint) escorted Plaintiff to the draft area so that he could attend a court date.

43. In the draft area, defendant Piskor, who was working in that area, assaulted Plaintiff.

44. Plaintiff did nothing to provoke this assault by defendant Piskor.

45. Upon witnessing defendant Piskor's initial assault on Plaintiff, Officers Sette and Mackiewicz also assaulted Plaintiff.

46. Several additional corrections officers, upon hearing the disturbance created by defendant Piskor's assault on Plaintiff, rushed to the site of the disturbance, where they and defendant Piskor applied mechanical restraints to Plaintiff.

47. Afterward, defendant Piskor submitted an "Inmate Misbehavior Report," in which he reported that Plaintiff instigated the February 25, 1997 disturbance when he tore defendant Piskor's shirt.

48. Defendant Piskor alleged in the February 25, 1997 Inmate Misbehavior Report that contraband was found on Plaintiff near the time of the February 25, 1997 disturbance.

49. Defendant Piskor did not include in the February 25, 1997 Inmate Misbehavior Report that he assaulted Plaintiff.

50. Defendant Piskor knew that the information contained in the February 25, 1997 Inmate Misbehavior Report was false.

51. The February 25, 1997 Inmate Misbehavior Report charged Plaintiff with violations of Charge Number 104.13 (Creating a Disturbance), Charge Number 100.11 (Assault on Staff), Charge Number 114.10 (Smuggling), Charge Number 106.10 (Refusing a Direct Order), and Charge Number 116.13 (Vandalism/Possession of Stolen Property).

52. On March 7, 1997, Plaintiff was afforded a hearing on the charges listed in the February 25, 1997 Inmate Misbehavior Report.

53. In preparation for that hearing, Plaintiff was denied critical information to which he was entitled for the purpose of preparing for his defense, including pertinent parts of the Use

7

of Force Report which were redacted and copies of grievances previously lodged with the Commissioner.

54. In preparation for the hearing, Plaintiff was unable to examine the alleged contraband (pen), since it was not preserved for trial.

55. At the hearing, the hearing officer failed to act in an impartial manner, since she used derogatory language to describe one of the witnesses who appeared on Plaintiff's behalf.

56. At the hearing, the pen that was allegedly found on Plaintiff's person on February 25, 1997 was not presented.

57. On March 12, 1997 the hearing on the February 25, 1997 Inmate Misbehavior Report was completed and the hearing officer found Plaintiff guilty of violations of Charge Number 104.13 (Creating a Disturbance), Charge Number 100.11 (Assault on Staff), Charge Number 114.10 (Smuggling), Charge Number 106.10 (Refusing a Direct Order), and Charge Number 116.13 (Vandalism/Possession of Stolen Property).

58. As a result, the hearing officer sentenced Plaintiff to 600 days confinement in the Special Housing Unit (SHU) (300 suspended), loss of the privilege to receive packages for 300 days, loss of the privilege to use the commissary for 300 days, loss of the privilege to use the telephone for 600 days (300 suspended), and 18 months of lost good time.

59. On March 19, 1997 Plaintiff appealed this decision.

60. On May 14, 1997, defendant Selsky upheld the March 12, 1997 decision on the charges contained in the February 25, 1997 Inmate Misbehavior Report.

61. Plaintiff served this sentence.

62. Plaintiff exhausted all the available administrative remedies with regard to the February 25, 1997 false Inmate Misbehavior Report.

## FIRST CAUSE OF ACTION

## DUE PROCESS VIOLATION BY DEFENDANT BENNIS

63. Plaintiff hereby repeats and realleges each and every allegation contained in Paragraphs 1-62 above, as if the same were fully set forth herein.

64. On July 11, 1996 defendant Bennis submitted to the Department of Corrections a false Inmate Misbehavior Report, alleging that Plaintiff assaulted him.

65. In so doing, defendant Bennis was acting under the color of state law since he used his position as a corrections officer to submit the false charges.

66. Defendant Bennis filed the July 11, 1996 false Inmate Misbehavior Report with the knowledge that was false.

67. Plaintiff was afforded a hearing concerning the July 11, 1996 misbehavior report, at which his due process rights were violated since he was denied the opportunity to present evidence and witnesses on his behalf.

68. Plaintiff was found guilty of the false charges filed against him by defendant Bennis.

69. As a result, Plaintiff was sentenced to 12 months in the Special Housing Unit.

70. The time Plaintiff served in SHU as a result of the false charges filed by defendant Bennis was excessive, and thereby constitutes a significant and atypical hardship.

71. Accordingly, Plaintiff requests that the Court award him damages in the amount of $365,000 for compensatory damages and $1,000,000 for punitive damages as against defendant John T. Bennis, in both his individual and official capacity.

## SECOND CAUSE OF ACTION

### DUE PROCESS VIOLATION BY DEFENDANT PISKOR

72. Plaintiff hereby repeats and realleges each and every allegation contained in Paragraphs 1-71 above, as if the same were fully set forth herein.

73. On February 25, 1997, defendant Piskor submitted to the Department of Corrections a false Inmate Misbehavior Report, alleging that Plaintiff assaulted him and that Plaintiff was in possession of contraband in the form of a pen.

74. In so doing, defendant Piskor was acting under the color of state law since he used his position as a corrections officer to submit the false charges.

75. Defendant Piskor submitted the February 25, 1997 false Inmate Misbehavior Report with the knowledge that the allegations contained therein were false.

76. Plaintiff was afforded a hearing concerning the February 25, 1997 Inmate Misbehavior Report, at which his due process rights were violated since he was denied the opportunity to present evidence and witnesses on his behalf, and the hearing officer did not act in an impartial manner.

77. Plaintiff was found guilty of the false charges filed against him by defendant Piskor.

78. As a result, Plaintiff was sentenced to 600 days confinement in the Special Housing Unit, 300 of which were suspended.

79. The time Plaintiff served in SHU as a result of the false charges filed by defendant Piskor was excessive, and thereby constitutes a significant and atypical hardship.

80. Accordingly, Plaintiff requests that the Court award him damages in the amount of $300,000 for compensatory damages and $1,000,000 for punitive damages as against defendant Thomas J. Piskor, in both his individual and official capacity.

## THIRD CAUSE OF ACTION

### DUE PROCESS VIOLATION BY DEFENDANT BRECKON

81. Plaintiff hereby repeats and realleges each and every allegation contained in Paragraphs 1-80 above, as if the same were fully set forth herein.

82. On July 29, 1996 defendant Breckon found Plaintiff guilty of the charges contained in the false July 11, 1996 Inmate Misbehavior Report.

83. In so doing, defendant Breckon was acting under the color of state law since he used his position as a hearing officer to find Plaintiff guilty of the false charges contained in the July 11, 1996 Inmate Misbehavior Report.

84. Defendant Breckon ignored Plaintiff's due process rights since he was denied the opportunity to present evidence and witnesses on his behalf.

85. Ultimately, Plaintiff was found guilty of the false charges filed against him by defendant Bennis.

86. As a result, Plaintiff was sentenced to 12 months in the Special Housing Unit.

87. The time Plaintiff served in SHU as a result of the false charges filed by defendant Bennis was excessive, and thereby constitutes a significant and atypical hardship.

88. Accordingly, Plaintiff requests that the Court award him damages in the amount of $365,000 for compensatory damages and $1,000,000 for punitive damages as against defendant T. Breckon, in both his individual and official capacity.

## FOURTH CAUSE OF ACTION

### DUE PROCESS VIOLATION BY DEFENDANT SELSKY

89. Plaintiff hereby repeats and realleges each and every allegation contained in Paragraphs 1-88 above, as if the same were fully set forth herein.

90. Defendant Selsky affirmed the outcome of Plaintiff's third hearing regarding the charges contained in the false misbehavior report dated July 11, 1996, in which he was found guilty.

91. In so doing, defendant Selsky was acting under the color of state law since he used his position as Director of Special Housing of the Inmate Disciplinary Program to affirm the guilty determination against Plaintiff concerning the false charges contained in the July 11, 1996 Inmate Misbehavior Report.

92. Defendant Selsky ignored Plaintiff's due process rights since he affirmed a determination in which it was apparent that Plaintiff was denied the opportunity to present evidence and witnesses on his behalf at the underlying hearing.

93. As a result, Plaintiff served 12 months in the Special Housing Unit.

94. The time Plaintiff served in SHU as a result of the false charges filed by defendant Bennis was excessive, and thereby constitutes a significant and atypical hardship.

95. Accordingly, Plaintiff requests that the Court award him damages in the amount of $365,000 for compensatory damages and $1,000,000 for punitive damages as against defendant Donald Selsky, in both his individual and official capacity.

### FIFTH CAUSE OF ACTION
### DUE PROCESS VIOLATION BY DEFENDANT SELSKY

96. Plaintiff hereby repeats and realleges each and every allegation contained in Paragraphs 1-95 above, as if the same were fully set forth herein.

97. Defendant Selsky affirmed the outcome of Plaintiff's second hearing regarding the charges contained in the false misbehavior report dated February 25, 1997, in which he was found guilty.

98. In so doing, defendant Selsky was acting under the color of state law since he used his position as Director of Special Housing of the Inmate Disciplinary Program to affirm the guilty determination against Plaintiff concerning the false charges contained in the February 25, 1997 Inmate Misbehavior Report.

99. Defendant Selsky ignored Plaintiff's due process rights since he affirmed a determination in which it was apparent that Plaintiff was denied the opportunity to present evidence and witnesses on his behalf at the underlying hearing.

100. As a result, Plaintiff served 3000 days in the Special Housing Unit.

101. The time Plaintiff served in SHU as a result of the false charges filed by defendant Piskor was excessive, and thereby constitutes a significant and atypical hardship.

102. Accordingly, Plaintiff requests that the Court award him damages in the amount of $300,000 for compensatory damages and $1,000,000 for punitive damages as against defendant Donald Selsky, in both his individual and official capacity.

### SIXTH CAUSE OF ACTION
#### DUE PROCESS VIOLATION BY DEFENDANT KELLY

103. Plaintiff hereby repeats and realleges each and every allegation contained in Paragraphs 1-102 above, as if the same were fully set forth herein.

104. Defendant Kelly wrongly destroyed the videotape of the disturbance that was the alleged basis for the charges contained in the July 11, 1996 false Inmate Misbehavior Report.

105. In so doing, defendant Kelly was acting under the color of state law since he used his position as Superintendent of the Attica Correctional Facility to destroy evidence relevant and important to Plaintiff's defense against the false charges contained in the July 11, 1996 Inmate Misbehavior Report.

106. Defendant Kelly destroyed the videotape of the videotape of the disturbance that was the alleged basis for the charges contained in the July 11, 1996 false Inmate Misbehavior Report, with the knowledge that it was relevant and important to Plaintiff's defense against the false charges contained in the July 11, 1996 Inmate Misbehavior Report.

107. Plaintiff was prevented from using the videotape destroyed by defendant Kelly in his third hearing on the charges contained in the July 11, 1996 Inmate Misbehavior Report, and as such was denied the opportunity to present evidence in his defense.

108. Plaintiff was found guilty of the false charges filed against him by defendant Bennis.

109. As a result, Plaintiff was sentenced to 12 months confinement in the Special Housing Unit.

110. The time Plaintiff served in SHU as a result of the false charges filed by defendant Bennis was excessive, and thereby constitutes a significant and atypical hardship.

111. Accordingly, Plaintiff requests that the Court award him damages in the amount of $365,000 for compensatory damages and $1,000,000 for punitive damages as against defendant Walter B. Kelly, in both his individual and official capacity.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff Detroy Livingston requests judgment for the violation of his due process rights as follows:

As against defendant John T. Bennis, in both his individual and official capacity, in the amount of $365,000 in compensatory damages and $1,000,000 in punitive damages;

As against defendant Thomas J. Piskor, in both his individual and official capacity, in the amount of $300,000 in compensatory damages and $1,000,000 in punitive damages;

As against defendant T. Breckon, in both his individual and official capacity, in the amount of $365,000 in compensatory damages and $1,000,000 in punitive damages;

As against defendant Donald Selsky, in both his individual and official capacity, in the amount of $665,000 in compensatory damages and $1,000,000 in punitive damages;

As against defendant Walter Kelly, in both his individual and official capacity, in the amount of $365,000 in compensatory damages and $1,000,000 in punitive damages;

As against each and all Defendants, all attorneys' fees and costs associated with the prosecution of this action, pursuant to 42 U.S.C. § 1988; and

Such other relief as the Court may deem just and proper.

May 16, 2006

HARTER, SECREST & EMERY LLP

By:     s/ Megan K. Dorritie
Megan K. Dorritie
*Attorneys for Plaintiff Detroy Livingston*
1600 Bausch and Lomb Place
Rochester, New York 14604-2711
Telephone: 585-231-1115
mdorritie@hselaw.com