UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DETROY LIVINGSTON,

                              Plaintiff,

                                                                                       DECISION AND ORDER

                                                                                  99-CV-6169L

                  v.

WALTER B. KELLY,
in both his official and individual capacity,
T. BRECKON,
in both his official and individual capacity,
DONALD SELSKY,
in both his official and individual capacity,
THOMAS J. PISKOR,
in both his official and individual capacity,
JOHN T. BENNIS,
in both his official and individual capacity,

                              Defendants.
_____

       Plaintiff, Detroy Livingston, an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), commenced this action *pro se* in 1999 against a number of DOCS employees, alleging that they had violated his constitutional rights in a number of respects, and asserting various claims pursuant to 42 U.S.C. § 1983.

       On appeal from a judgment entered in favor of defendants, pursuant to a jury verdict finding no cause of action, the Court of Appeals for the Second Circuit affirmed in part and vacated in part.

Specifically, the court remanded for further consideration of certain claims that this Court had dismissed prior to trial, specifically: (1) plaintiff's due process claims challenging the disciplinary hearings arising out of two incidents in July 1996 and February 1997; (2) plaintiff's claim that Attica Superintendent Walter B. Kelly violated his due process rights with respect to the destruction of videotapes of the July 1996 incident; and (3) plaintiff's claims that Correction Officers John T. Bennis and Thomas J. Piskor filed false misbehavior reports against plaintiff regarding the two incidents.

On remand, plaintiff, now represented by assigned counsel, filed an amended complaint (Dkt. #171), asserting six causes of action against five defendants: (1) a due process claim against Bennis based on Bennis's issuance of an allegedly false misbehavior report in 1996; (2) a due process claim against Piskor based on Piskor's issuance of an allegedly false misbehavior report in 1997; (3) a due process claim against hearing officer T. Breckon, based on Breckon's conduct of a hearing on Bennis's July 1996 misbehavior report; (4) a due process claim against then-Director of Special Housing Donald Selsky, based on Selsky's affirmance of the finding of guilt against plaintiff on the July 1996 misbehavior charge; (5) a due process claim against Selsky based on Selsky's affirmance of the finding of guilt against plaintiff on the February 1997 misbehavior charge; and (6) a due process claim against Kelly based on Kelly's alleged destruction of a videotape of the incident giving rise to the July 1996 misbehavior report. Defendants have moved to dismiss all of plaintiff's claims against defendants in their official capacity, as well as plaintiff's first, second and third causes of action, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**DISCUSSION**

**I. Claims Against Defendants in their Official Capacities**

Defendants contend that all of plaintiff's claims against defendants in their official capacities are barred by the Eleventh Amendment. Plaintiff concedes that the official-capacity claims are barred and has withdrawn those claims. Dkt. #177 at 8 n. 2. Defendants' motion to dismiss plaintiff's claims against defendants in their official capacities is therefore granted. *See Farid v. Smith*, 850 F.2d 917, 920-23 (2$^d$ Cir. 1988); *Murphy v. West*; 533 F.Supp.2d 312, 317 (W.D.N.Y. 2008).

**II. False Misbehavior Reports**

Defendants Bennis and Piskor contend that plaintiff's claims against them based on defendants' issuance of allegedly false misbehavior reports should be dismissed for failure to state a claim upon which relief can be granted. Defendants assert that, absent a retaliatory motive, the issuance of false charges against an inmate does not give rise to a constitutional violation.

That assertion is only partially true, however. As the Second Circuit noted in its decision in this case, an inmate's allegation that he has been found guilty of false disciplinary charges may support a constitutional claim if he also alleges that he was denied the minimum procedural due process protections guaranteed by the Fourteenth Amendment. *See Livingston v. Piskor*, 153 Fed.Appx. 769, 771 and n. 1 (2$^d$ Cir. 2005) (adding that "a finding by the District Court that plaintiff was denied his due process rights may provide an independent basis for considering plaintiff's claims

with respect to the filing of false misbehavior reports"); *see also Franco v. Kelly*, 854 F.2d 584, 587 (2$^d$ Cir. 1988); *Brewer v. Kamas*, 533 F.Supp.2d 318, 329-30 (W.D.N.Y. 2008) (summary judgment for defendants on inmate's claim based on filing of a false misbehavior report "is improper where an inmate either is not granted a hearing on the alleged false disciplinary charges, or is granted a disciplinary hearing, but is unfairly denied the right to rebut the charges by presenting evidence or calling witnesses in defense of the charges against him"); *Faison v. Janicki*, No. 03-CV-6475, 2007 WL 529310, at *4 (W.D.N.Y. Feb. 14, 2007) ("The Second Circuit has held that the issuance of false misbehavior reports against an inmate by corrections officers is insufficient on its own to establish a denial of due process, but that such an action violates due process where ... procedural protections were denied that would have allowed the inmate to expose the falsity of the evidence against him") (citing *Freeman v. Rideout*, 808 F.2d 949, 952 (2$^d$ Cir.1986), *cert. denied*, 485 U.S. 982 (1988)) (other citation omitted).

In the case at bar, plaintiff does allege that the disciplinary proceedings against him based on the allegedly false misbehavior reports did not meet constitutional due process standards. Indeed, in its summary order remanding this case, the Court of Appeals stated that defendants "concede[d] that a remand [wa]s appropriate with respect to so much of plaintiff's complaint as seeks to challenge the due process afforded the plaintiff at multiple disciplinary hearings conducted in connection with [the] two misbehavior reports ... ." 153 Fed.Appx. at 770. In particular, I note that plaintiff alleges that at the third and final hearing on the charges against him, which led to plaintiff's serving twelve months in the Special Housing Unit ("SHU"), *see Sims v. Artuz*, 230 F.3d 14, 23 (2$^d$ Cir. 2000) (sentence of one year in SHU was "of sufficient length to be atypical and significant,"

thereby implicating procedural due process concerns), plaintiff was unable to present the videotape of the July 1996 incident because the videotape had been destroyed, that one inmate witness had been paroled since the second hearing and was therefore unavailable to testify, and that another inmate witness claimed that so much time had passed since the incident that he could no longer recall the events in question. Thus, summary judgment for defendants on plaintiff's false-report claims is inappropriate.[1]

### III. Due Process Claim Against Breckon

Defendant Breckon contends that plaintiff's claim against him should be dismissed because the hearing over which Breckon presided did not result in any harm to plaintiff. Breckon conducted a hearing in 1996 and sentenced plaintiff to twelve months in SHU. Breckon's decision was reversed on administrative appeal. A second hearing was held before another officer, who also found plaintiff guilty, and that finding was reversed in plaintiff's Article 78 proceeding in state court. A third hearing was held, also before a different officer, plaintiff was again found guilty and sentenced to twelve months in SHU, and that decision was upheld on appeal. Based on those facts, Breckon

---

[1] Defendants also contend that "[t]he issue of whether Officer Piskor wrote a false misbehavior report was decided by a jury in his favor at Mr. Livingston's trial before this Court," and that "[a]s such, res judicata, and/or collateral estoppel should protect C.O. Piskor from having to relitigate the exact same issue of whether there was was excessive use of force." Defendants' Mem. of Law (Dkt. #175) at 4 n. 2.

The jury at plaintiff's trial did not make any finding concerning whether Piskor wrote a false misbehavior report, however. The jury's only finding with respect to Piskor was its finding that Piskor did not use excessive force against plaintiff. *See* Verdict Form (Dkt. #148) at 1. Plaintiff's false-misbehavior-report claims were dismissed by this Court prior to trial, and the Court of Appeals expressly remanded those claims for further consideration by this Court. *See Livingston v. Piskor*, 153 Fed.Appx. 769, 771 ($2^d$ Cir. 2005).

argues that "[a]s a result of the administrative reversal and subsequent rehearing(s) plaintiff was not harmed by the conduct of Breckon."  Defendants' Mem. of Law (Dkt. #175) at 5.

In response, plaintiff contends that since the third hearing, which ultimately resulted in the sentence that plaintiff served, was itself marked by alleged procedural infirmities (in particular the destruction of the videotape prior to the third hearing, the release of one inmate witness and fading of another inmate witness's memory), Breckon should remain liable for any due process violations that occurred at the first hearing, over which he presided.  Plaintiff argues that a subsequent hearing cannot cure a prior due process violation if the subsequent hearing does not itself comport with the requirements of the Due Process Clause.

I am not persuaded by plaintiff's arguments in this regard.  Assuming *arguendo* that the final hearing was somehow tainted or unfair, the fact remains that the harm suffered by plaintiff was directly attributable to the third and final hearing, not to the first hearing.  There is no indication that anything that Breckon did or failed to do at that hearing was responsible for the alleged procedural infirmities at the third hearing.

For one thing, it was Kelly, not Breckon, who was allegedly responsible for the destruction of the videotape following the first hearing.  In addition, although there is, arguably, *some* causal connection between Breckon's errors at the first hearing and the eventual unavailability, or loss of memory on the part of inmate witnesses at the third hearing (in the sense that Breckon's errors made it necessary to hold a second hearing, which in turn led to the third hearing, by which time some inmates had been released or had forgotten the details of the relevant events), any such nexus is far too attenuated to provide a basis for liability on Breckon's part.

That conclusion is supported by the Second Circuit's ruling in *Horne v. Coughlin*, 155 F.3d 26 (2$^د$ Cir. 1998), 528 U.S. 1052 (1999). In *Horne*, the inmate had been found guilty at a disciplinary hearing and sentenced to eight months' SHU confinement and loss of good-time credits. After an administrative reversal, a second hearing was held, at which the inmate was again found guilty and sentenced to 300 days in SHU and loss of good-time credits. Following that hearing, however, the state attorney general's office withdrew its opposition to the inmate's Article 78 proceeding, which the inmate had filed after the first hearing, and as a result, both hearing determinations were "annulled and vacated," the charges were dismissed with prejudice, the inmate's good time credits were restored, and the references to the disciplinary actions were expunged from his records, although by then the inmate had served the entire six-month sentence imposed following the second hearing. *Id.* at 28.

In his federal § 1983 action, the inmate brought due process challenges against both his first and second disciplinary hearings. *See* 155 F.3d at 28 (stating that plaintiff alleged that "defendants violated his due process rights ... at the disciplinary hearings"). The Court of Appeals affirmed the dismissal of the plaintiff's due process claim on qualified-immunity grounds, but in doing so, the court focused entirely on the second hearing, stating, "We need not discuss Horne's contention that his rights were violated at the first hearing, because it became a nullity. All findings and penalties imposed at the first hearing were vacated, and all the penalties Horne suffered were imposed at the second hearing." *Id.* at 31 (footnote omitted). Clearly, then, the court did not hold that the second hearing "cured" any alleged due process violations at the first hearing; rather, the court concluded that, regardless of whether the procedures followed at the second hearing comported with the

requirements of due process, that hearing simply nullified the first hearing, rendering the first hearing irrelevant to the harm suffered by the plaintiff.[2] *See also Gaston v. Coughlin*, 249 F.3d 156, 164 (2$^d$ Cir. 2001) (stating that plaintiff's confinement in SHU was "entirely attributable to the ruling following the second hearing, given that the result of the first hearing was administratively overruled and that Gaston's sentence following the second hearing credited his prior time in SHU. Accordingly, the result of the first hearing did not deprive Gaston of due process").

**CONCLUSION**

Defendants' motion to dismiss (Dkt. #174) is granted in part and denied in part. All of plaintiff's claims against defendants in their official capacity, as well as plaintiff's claims against defendant T. Breckon, are dismissed. In all other respects, the motion is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       June 2, 2008.

---

[2] The fact that the state had withdrawn its opposition to the plaintiff's Article 78 proceeding in *Horne* also suggests that the second hearing may indeed have been procedurally defective, which again shows that the Second Circuit's decision did not rest on any "curing" by the second hearing of whatever due process violations may have occurred at the first hearing.