UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DETROY LIVINGSTON,

                                Plaintiff,

                                                                        <u>DECISION AND ORDER</u>

                                                                        99-CV-6169L

              v.

WALTER B. KELLY,
in both his official and individual capacity, et al.,

                                Defendants.
_____

      Plaintiff, Detroy Livingston, an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), commenced this action *pro se* against a number of DOCS employees, alleging that they had violated his constitutional rights in several respects, and asserting various claims pursuant to 42 U.S.C. § 1983.

      On appeal from a judgment entered in favor of defendants, pursuant to a jury verdict finding no cause of action, the Court of Appeals for the Second Circuit affirmed in part, vacated in part, and remanded for further consideration of certain claims that this Court had dismissed prior to trial. 153 Fed.Appx. 769 (2d Cir. 2005).

      On remand, plaintiff, through assigned counsel, filed an amended complaint (Dkt.# 171), asserting six causes of action against five defendants. Defendants moved to dismiss some of those

claims, and this Court issued a Decision and Order granting that motion in part and denying it in part. 561 F.Supp.2d 329 (W.D.N.Y. 2008).

Pursuant to the Court's 2008 Decision and Order, the following claims remain: (1) a due process claim against defendant John Bennis based on Bennis's issuance of an allegedly false misbehavior report against plaintiff in 1996; (2) a due process claim against defendant Thomas Piskor based on Piskor's issuance of an allegedly false misbehavior report in 1997; (3) a due process claim against then-Director of Special Housing Donald Selsky, based on Selsky's affirmance of the finding of guilt against plaintiff on the 1996 misbehavior charge; (4) a due process claim against Selsky based on Selsky's affirmance of the finding of guilt against plaintiff on the 1997 misbehavior charge; and (5) a due process claim against defendant Walter Kelly based on Kelly's alleged destruction of a videotape of the incident giving rise to the July 1996 misbehavior report.

Defendants have now moved for summary judgment dismissing all of plaintiff's remaining claims, pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons that follow, defendants' motion is granted, and the complaint is dismissed.

## DISCUSSION

**I. Selsky**

**A. 1996 Misbehavior Charge**

As stated, plaintiff's claims against Selsky are twofold. Plaintiff alleges that Selsky violated his due process rights, first by affirming the guilty finding relating to the 1996 misbehavior charge, and again by affirming the guilty finding stemming from the 1997 misbehavior charge.

Although the relevant facts of this case have been set forth in the prior decisions of this Court and of the Court of Appeals, familiarity with all of which is assumed, a brief recitation of the chronology of events concerning the 1996 charge is warranted. Plaintiff was found guilty after the first hearing on that charge, and that guilty finding was reversed by Selsky on plaintiff's administrative appeal. Plaintiff was also found guilty after the second hearing, which was conducted by a different hearing officer. Selsky affirmed that finding, but the finding was later reversed in plaintiff's Article 78 proceeding in state court. A third hearing was held in December 1997, again before a different officer, plaintiff was again found guilty, and was sentenced to twelve months in the Special Housing Unit ("SHU"). Plaintiff served the full sentence. It is Selsky's affirmance of that third disposition that is at issue in plaintiff's first claim against Selsky in this action.

Plaintiff alleges that his due process rights were violated at the third hearing, because the videotape of the underlying incident had been destroyed, and because certain persons whom he wished to call as witnesses were either unavailable or refused to testify, partly because of the length of time that had passed since the underlying incident.[1]

Those allegations, however, fail to support a due process claim against Selsky. First, I note that the guilty finding at the second hearing was reversed in plaintiff's Article 78 proceeding, not because of the loss of the videotape, but because of the second hearing officer's ejection of plaintiff from the hearing. The state court addressed Livingston's allegations concerning the videotape, but stated that he had "made no effort to describe what the videotape revealed," and that the videotape

---

[1]One prospective witness, for example, had been released on parole by the time of the third hearing.

"evidently failed to support [Livingston's] defense at the first hearing because he was found guilty of the charges [at that hearing]." Dkt. #199-4 at 5.

For essentially the same reasons given by the state court, I find that there was no due process violation here in the first place. Plaintiff's contention that he was prejudiced by the loss of the tape is utterly conclusory and lacking in evidentiary support.

In addition, based on its finding that the videotape "was not destroyed in bad faith," but pursuant to a "routine[] ... policy of recycling such tapes," as well as "the questionable probative value the tape would have offered to [Livingston's] defense," the state court concluded that "the loss of the tape did not mandate dismissal of the charges." *Id.* at 5-6 (citation omitted). In light of that explicit holding by the state court that dismissal of the charges was not required, it was hardly unreasonable for Selsky to conclude, on plaintiff's administrative appeal from the third hearing, that the unavailability of the videotape at the third hearing did not in itself mandate reversal of the guilty finding.

Thus, even if plaintiff could show that the destruction of the videotape led to a violation of his due process rights–and again, I do not find that it did–Selsky would still be entitled to qualified immunity. Qualified immunity shields public officials "from civil damages liability insofar as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known,' *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), or insofar as 'it [is] objectively reasonable for them to believe that their acts d[o] not violate those rights,' *Velardi v. Walsh*, 40 F.3d 569, 573 (2d Cir. 1994)." *Simms v. Village of Albion*, 115 F.3d 1098, 1106 (2d Cir. 1997); *accord Brown v. City of Oneonta*, 106 F.3d 1125, 1130-31 (2d Cir.1997). Given the state

court's statements and conclusions concerning the loss of the videotape, it cannot be said that a reasonable person in Selsky's position would have known that the destruction of the tape gave rise to a constitutional violation.

I also note that Selsky could reasonably have concluded that the hearing officer's decision was supported by the evidence. Selsky had before him the entire administrative record, and based on my own review of that record, it does contain at least "some evidence," for constitutional purposes, in support of the hearing officer's decision. *See Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004); *Garcia v. Selsky*, ___ F.Supp.2d ___, 2010 WL 1048471, at *3 (W.D.N.Y. Mar. 22, 2010); *Eleby v. Selsky*, ___ F.Supp.2d ___, 2010 WL 424583, at *4 (W.D.N.Y. Feb. 8, 2010).[2]

**B. 1997 Misbehavior Charge**

In February 1997, plaintiff was charged in a misbehavior report with several violations, including smuggling and possession of stolen property. He was found guilty after a hearing, and sentenced to 600 days (300 suspended) of confinement in SHU. Dkt. #198 Ex. N. Selsky affirmed that disposition on appeal. Dkt. #198 Ex. P.

---

[2]In plaintiff's subsequent Court of Claims proceeding, seeking damages in connection with the underlying incident, the Appellate Division reversed the trial court's denial of Livingston's motion for sanctions based on the destruction of the videotape, and directed on remand that the State be precluded, pursuant to C.P.L.R. § 3126, "from offering any evidence at trial in opposition to [Livingston's] proof with respect to the incidents that were the subject of the destroyed videotapes." *Livingston v. State*, 254 A.D.2d 694, 695 (4th Dep't 1998). That the Appellate Division found that some sanction was warranted under New York's procedural rules does not, however, mean that plaintiff's federal constitutional rights were violated at the third hearing. *See Smith v. Stanton*, 545 F.Supp.2d 302, 306 (W.D.N.Y. 2008). In any event, the Appellate Division's decision in the Court of Claims proceeding, which postdated Selsky's affirmance of the result of the third hearing, does not show that Selsky violated plaintiff's rights, or that he had reason to think that plaintiff's due process rights had been violated.

Plaintiff contends that his due process rights were violated in connection with these charges, first, because the hearing officers' guilty findings were not supported by the evidence, and second, because the hearing officer was partial or biased. He alleges that Selsky likewise violated his rights by affirming the hearing officer's decision.[3]

Both grounds for this claim–insufficient evidence and bias on the part of the hearing officer–are conclusory and not supported by the record. As stated above, for constitutional purposes it is only necessary that the hearing officer's decision be supported by "some evidence." *See Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985) ("the relevant question is whether there is any evidence in the record that could support the conclusion reached by the [prison] disciplinary board"). While I recognize that the Second Circuit "has not construed the phrase 'any evidence' [as used in *Hill*] literally," but has instead "looked to see whether there was 'reliable evidence' of the inmate's guilt," *Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004) (quoting *Taylor v. Rodriguez*, 238 F.3d 188, 194 (2d Cir. 2001)), the standard remains a deferential one, and it has been met here. There was evidence that a correction officer found what was described as a "Papermate black state pen" hidden in Livingston's hair, and though plaintiff contends that this evidence was not credible, that was a matter for the hearing officer to decide. Certainly the evidence was not "so blatantly implausible when taken literally that [it did] not constitute even 'some evidence' of [the] inmate's guilt." *Zavaro v. Coughlin*, 970 F.2d 1148, 1152 (2d Cir. 1992).

Plaintiff's assertion of hearing officer bias is equally meritless. Plaintiff alleges that at one point he heard the hearing officer refer to one of plaintiff's witnesses as a "rat." Livingston Decl.

---

[3]Plaintiff has not sued the hearing officer herself.

(Dkt. #198) ¶ 67. By plaintiff's own admission, however, no such statement appears in the hearing transcript. *Id.* ¶ 68. Even if the officer did make such a statement, however, plaintiff has not given any explanation of the context in which the officer made the statement, or what if anything might have prompted her to utter it. The bare assertion that the hearing officer used the term "rat" in reference to one of plaintiff's witnesses does not create an issue of fact concerning whether she prejudged the outcome of the hearing. *See Francis v. Coughlin*, 891 F.2d 43, 47 (2d Cir. 1989); *Crump v. Ekpe*, No. 07-CV-133, 2010 WL 502762, at *15 (N.D.N.Y. Feb. 8, 2010); *Wright v. Conway*, 584 F.Supp.2d 604, 609 (W.D.N.Y. 2008).

In any event, Livingston's allegations of bias that he made in his administrative appeal were as lacking in support as they are here. Accordingly, even if the hearing officer was biased, plaintiff's claim against Selsky is still subject to dismissal on qualified immunity grounds. *See Garcia*, ___ F.Supp.2d at ___. 2010 WL 1048471, at *3 n.3.

## II. Bennis and Piskor

Plaintiff alleges that defendants Bennis and Piskor issued false misbehavior reports against plaintiff in 1996 and 1997, respectively. In its 2005 decision in this case, the Second Circuit stated that "because plaintiff's due process challenge to the conduct of his disciplinary hearings remains to be considered on remand, plaintiff's claims based on the alleged filing of false misbehavior reports must also be remanded so that the District Court may consider these claims in light of our analysis in *Freeman* and other applicable caselaw." 153 Fed.Appx. at 771.[4]

---

[4]In *Freeman v. Rideout*, 808 F.2d 949 (2d Cir. 1986), the Second Circuit held that a fair
(continued...)

As this Court explained on remand from that decision, "an inmate's allegation that he has been found guilty of false disciplinary charges may support a constitutional claim if he also alleges that he was denied the minimum procedural due process protections guaranteed by the Fourteenth Amendment." 561 F.Supp.2d at 331. At that time, I denied defendants' motion to dismiss the claims against Bennis and Piskor under Rule 12(b)(6). *Id.* at 332.

What is before me now, however, is defendants' motion for summary judgment. The standards applicable to such a motion are far different from those applied to a motion to dismiss for failure to state a claim. Plaintiff cannot simply rest on his pleadings, but must present evidence demonstrating the existence of a genuine issue of material fact. *Gilmore v. University of Rochester*, 654 F.Supp.2d 141, 148-49 (W.D.N.Y. 2009).

For the reasons already stated, he has not done so. Plaintiff's allegations and the evidence concerning his two disciplinary proceedings do not show that his due process rights were violated in any way.

In addition, I note that the Second Circuit stated in its 2005 decision that any determinations concerning "whether plaintiff's complaint could also be construed as raising a retaliation claim are to be made by the District Court should they become necessary during the proceedings to be

---

⁴(...continued)
hearing, conforming to the due process standards of *Wolff v. McDonnell*, 418 U.S. 539 (1974), would "cure" a constitutional violation otherwise resulting from a false accusation. *Id.* at 954. In a subsequent case, however, the court held that "the proposition of *Freeman*–that any unconstitutionality inhering in a false accusation is vitiated when it is tested in a fair hearing–cannot support summary judgment where there is evidence that the accused was not shown the allegedly spurious evidence used against him, and therefore, arguably, did not receive a fair hearing." *Grillo v. Coughlin*, 31 F.3d 53, 56 (2d Cir. 1994). *But see Williams v. Smith*, 781 F.2d 319, 324 (2d Cir. 1986) ("The filing of a false report does not, of itself, implicate the guard who filed it in constitutional violations which occur at a subsequent disciplinary hearing").

conducted on remand." 153 Fed.Appx. at 771 n.1. The second amended complaint does not appear to allege that defendants issued the misbehavior reports out of any retaliatory motive, but even if it can be so read, there is simply a complete absence of evidence upon which a jury could find for plaintiff on such a claim. Such claims are easily fabricated, and are therefore appropriately considered with "skepticism and care ... ." *Flemming v. Wurzberger*, 322 Fed.Appx. 69, 72 (2d Cir. 2009) (citing *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003)). There is no evidence here to support a retaliation claim at all, much less enough evidence to defeat defendants' motion for summary judgment.

**III. Kelly**

Plaintiff's claim against Kelly is based on the destruction of the videotape of the 1996 incident giving rise to the July 1996 misbehavior report. In its 2005 decision, the Court of Appeals held that this Court had erred in dismissing plaintiff's claim against Kelly based on Kelly's lack of personal involvement, since "Kelly's affidavit was admittedly silent with respect to that issue." 153 Fed.Appx. at 771.

In support of their current motion for summary judgment, however, defendants have submitted a declaration of Kelly (Dkt. #188), in which he states that he played no part in recycling or taping over the videotape of the 1996 incident. Plaintiff has offered no evidence to rebut that assertion. Although plaintiff argues that it is still possible that Kelly may somehow have been responsible for the failure to preserve the videotape, such speculation and surmise is not enough to

defeat a well-founded motion for summary judgment. *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 215 n. 4 (2d Cir. 2006).

In addition, it bears repeating that the evidence does not support plaintiff's assertion that he was prejudiced by the loss of the tape. As the state court noted in plaintiff's Article 78 proceeding, plaintiff has failed to show that the video, had it been available at the third hearing, would likely have led to a different result.

**IV. Plaintiff's Request for Discovery**

In opposition to defendants' motion, plaintiff contends that he should be permitted further discovery in this action. Plaintiff's counsel has submitted a declaration in support of that request (Dkt. #199) outlining what discovery is sought and why, pursuant to Rule 56(f) of the Federal Rules of Civil Procedure.

To warrant a Rule 56(f) continuance, the attorney for the moving party must submit an affidavit setting forth "1) the nature of the uncompleted discovery, *i.e.*, what facts are sought and how they are to be obtained; and 2) how those facts are reasonably expected to create a genuine issue of material fact; and 3) what efforts the affiant has made to obtain those facts; and 4) why those efforts were unsuccessful." *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 926 (2d Cir. 1985). Whether to grant a Rule 56(f) motion lies within the discretion of the district court. *MM Arizona Holdings LLC v. Bonanno*, 658 F.Supp.2d 589, 596 (S.D.N.Y. 2009).

Although plaintiff's attorney has explained the nature and purpose of the requested discovery, I fail to see how such discovery could reasonably be expected to create a genuine issue of material

fact here. There must be more than a speculative or remote possibility that the party opposing summary judgment will uncover some favorable evidence. *See Robinson v. Allstate*, ___ F.Supp.2d ___, 2010 WL 1404023, at *8 (W.D.N.Y. Mar. 30, 2010) (citing *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994)). Given the defects in plaintiff's claims detailed above, I see no reasonable likelihood that further discovery in this case would enable plaintiff to salvage any of his claims. Plaintiff's request is therefore denied.

## CONCLUSION

Defendants' motion for summary judgment (Dkt. #186) is granted, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       April 26, 2010.